UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>SHAUN MCNABB,<br><br>                Defendant. | Case No. 1:15-CR-00019-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

The Court has before it a Motion to Suppress (Dkt. 33) filed by defendant Shaun McNabb. The Court held an evidentiary hearing on August 13, 2015, and took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

## BACKGROUND

On December 25, 2014, at approximately 1:25 a.m., Boise Police Department ("BPD") Officers Tad Miller and Dan Muguira observed a black Cadillac make a left lane change without signaling properly, and then make a wide left turn. Defendant Shaun McNabb ("McNabb") was driving the Cadillac. The officers also observed a white Ford Explorer traveling very closely behind McNabb's Cadillac.[1] It appeared to officers that

---

[1] While observing the vehicles, Officer Miller determined the Explorer was registered to Jesse Starkey, who was on parole and had a lengthy criminal record. (Dkt. 33-2, p. 4.)

the Explorer was attempting to divert their attention away from the Cadillac by weaving within and outside of its lane. Before the officers could activate their overhead lights, both the Cadillac and the Explorer pulled into a Shell gas station. Officer Miller pulled in behind the Cadillac and activated his overhead lights to initiate a traffic stop for the improper turn and failure to signal properly.

Upon stopping his Cadillac, McNabb immediately exited the vehicle and locked the doors. McNabb refused Officer Miller's commands to get back in his car, stating he had already locked it. Officer Miller asked McNabb four times to get back in his vehicle and sit down. After the fourth time McNabb refused, Officer Miller placed him under arrest for obstructing an officer and driving without privileges.[2] Officer Muguira arrived at the scene while Officer Miller was arresting McNabb. As both officers started to walk McNabb to the patrol vehicles, McNabb yelled out to the driver of the Explorer, "Hey Jessie, have my bond posted and tell my brother to come get my car." (Dkt. 32-2, p. 5.) The Explorer quickly pulled out of the parking lot and drove away. Next to his patrol vehicle, Officer Miller searched McNabb's person incident to arrest. Officer Miller located approximately $322.00, the keys to McNabb's Cadillac, and a small pocket knife concealed in McNabb's left front pocket. (*Id.*) Officer Miller then placed McNabb in the back seat of his patrol vehicle.

---

[2] A standard law enforcement record check made during the traffic stop revealed McNabb's driver's license had been suspended for failure to maintain insurance. (*Id.*)

Due to McNabb's suspicious behavior during the traffic stop, officers contacted Officer Plaisted of the BPD with a K-9 request, and asked him to come to the Shell parking lot. Within six minutes following the traffic stop, Officer Plaisted arrived at the gas station with his certified drug dog. After performing a "free-air" sniff, the drug dog positively alerted to the presence of drugs in McNabb's Cadillac. Officer Plaisted informed the other officers of the positive alert and then aided in a warrantless search of the car. Officers located a .45 caliber Sig Sauer handgun, a total of twelve .45 caliber rounds, two vacuum-seal plastic bags containing a total of 1.199 pounds of marijuana, and a digital scale in the trunk of McNabb's car.[3] McNabb was informed of his *Miranda* rights and transferred and booked into the Ada County Jail.

On January 14, 2015, McNabb was indicted for possession of a controlled substance with intent to distribute, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a prohibited person. McNabb thereafter filed the instant Motion to Suppress, seeking to suppress the evidence of controlled substances and weapons gained from the search of his vehicle.

## ANALYSIS

Searches conducted outside the judicial process, without a warrant, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *United States v. Smith*,

---

[3] As convicted felon, McNabb was prohibited from possessing firearms.

389 F.3d 944, 950 (9th Cir. 2004).  In his Motion to Suppress, McNabb does not dispute that the traffic stop and his arrest for driving without privileges and resisting and obstructing officers were valid.  Nor does McNabb challenge the search of his person or pockets during his arrest.  Instead, McNabb argues the search of his car constituted an unlawful search incident to arrest under *Arizona v. Gant*, 556 U.S. 332 (2009).

The search incident to arrest exception to the warrant requirement derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.  *United States v. Robinson*, 414 U.S. 218, 234 (1973).  When these interests no longer exist, "because the scene is secure and the arrestee is handcuffed, secured in the back of a patrol car and under supervision of an officer," a warrantless search of the arrestee's car is unconstitutional, unless, as the Supreme Court held in *Arizona*, it is reasonable to believe the vehicle contains evidence of the offense of the arrest.  *Arizona*, 556 U.S. at 337, 346 (internal quotation marks and citation omitted).  McNabb suggests the crimes he was arrested for—driving without a license and obstructing officers—were not crimes that would lead the officers to have reason to believe McNabb's vehicle would contain relevant evidence to justify a warrantless search.  (Dkt. 33-1, p. 2.)

The government concedes, and the Court agrees, that the search of McNabb's car did not fall within the search incident to arrest exception under *Arizona*.  (Dkt. 36, p. 6.)  However, the government argues McNabb's vehicle was not searched incident to arrest, but was instead lawful because it was supported by probable cause, and thus fell within the automobile exception to the warrant requirement.  (*Id*.)  The automobile exception allows police officers to "conduct a warrantless search of a vehicle if they have probable

cause to believe that it contains contraband." *United States v. Pinela-Hernandez*, 262 F.3d 974, 977-78 (9th Cir. 2001). A determination of probable cause is based on the "totality of the circumstances" known to the officers at the time of the search. *United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010). Because the automobile exception is justified by the exigency created by the inherent mobility of vehicles, as well as the relatively minimal expectation of privacy that exists with respect to vehicles, the applicability of the automobile exception does not turn on whether the car's driver has already been taken into custody or the risk of mobility has otherwise been eliminated. *U.S. v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012) (citations omitted).

The government contends the BPD officers had probable cause to search McNabb's vehicle based upon his behavior during the traffic stop, the conduct of the driver of the Explorer, and the positive drug dog alert for the presence of illegal drugs in McNabb's car. (Dkt. 36, pp. 6-12.) McNabb responds that the BPD officers lacked any factual basis to believe that any particular type of contraband was in the vehicle, and that this lack of specificity defeated probable cause. (Dkt. 40, pp. 2-5) (quoting *United States v. Rogers*, 656 F.3d 1023 (9th Cir. 2011)).

During the suppression hearing, McNabb also refuted several aspects of his arrest represented in the record and testified to by Officers Miller, Muguira and Plaisted.[4] Specifically, McNabb disagreed that Officer Miller initiated a traffic stop, and instead

---

[4] Although McNabb disagreed with many aspects of the officers' testimony, the Court here recounts only disputes potentially relevant to the Motion to Suppress.

maintained that he had already pulled over and exited his vehicle when Officer Miller pulled in behind him and approached his car. McNabb stated he couldn't tell if a police officer was behind him or not when he pulled into the Shell parking lot because the Explorer was so close behind him. McNabb also testified that he did not know why the Explorer, which he admitted was driven by his acquaintance, Jesse Starkey, was behind him, and denied that the two were traveling together. McNabb did not clarify why he pulled into the Shell station (which was closed at the time) and parked, or why the Explorer pulled in after him. Finally, and most notably, McNabb suggested Officer Miller initiated the search of his vehicle before Officer Plaisted circled his car with the drug dog and obtained a positive alert for drugs.

The government's evidence at the suppression hearing differed significantly from McNabb's version of events. Officer Miller testified that he could not initially pull behind McNabb's Cadillac to initiate the traffic stop because Starkey was following McNabb too closely, but that he activated his overhead lights as both cars pulled into the gas station parking lot. Officer Miller stated the Cadillac was still moving when he activated his overhead lights.[5] Officer Muguira testified that he witnessed McNabb's Cadillac and Starkey's Explorer leave the parking lot of Q's Bar at the same time shortly before the traffic stop, and that the vehicles travelled in tandem eastbound on Fairview, southbound on Orchard, and then eastbound on Emerald. Officer Muguira stated the

---

[5] Activating overhead lights initiates a traffic stop under Idaho law. I.C. § 49-625; I.C. § 49-1404.

Cadillac and Explorer were both parked in the gas station lot when he arrived at the scene moments after Officer Miller initiated the stop.

With respect to whether the search of McNabb's vehicle occurred before or after the drug dog's sniff of McNabb's vehicle, Officer Miller testified that he only opened the door of the Cadillac after Officer Plaisted advised that his drug dog positively alerted for drugs. Officer Miller confirmed that the first and only time he accessed the vehicle was after the positive alert, as the alert provided probable cause to search the car. Officer Muguira testified he called for a K-9 unit minutes after he arrived at the scene based on McNabb's suspicious activity.[6] Officer Muguira confirmed that he, Officer Miller and Officer Plaisted searched McNabb's vehicle only after the drug dog alerted because the alert gave them probable cause to search the car. Officer Plaisted testified that he was asked to conduct a free air sniff of the vehicle when he arrived at the scene. Once his dog positively alerted to the presence of drugs, Officer Plaisted stated he was 100 percent confident there were odors associated with controlled substances on or in the vehicle. Officer Plaisted testified he determined there was probable cause to search McNabb's vehicle based on his dog's positive alert, and confirmed he informed Officers Miller and Muguira of this prior to the search.

The Court had the opportunity to observe the witnesses and assess their credibility during the hearing. The Court found the police officers to be credible and notes that their

---

[6] According to police reports, the stop was initiated at 1:26 a.m. on December 25, 2015. Officer Muguira requested a K-9 unit at 1:29 a.m., and Officer Plaisted and his drug dog arrived at 1:31 a.m. Government Hearing Exhibit 8B, Incident History Report.

testimony was consistent and corroborated by the record. McNabb's testimony, by contrast, was argumentative, at times contradictory, and ultimately not credible. In short, the Court finds no evidence to support McNabb's contentions that the traffic stop was invalid or that the search was conducted prior to the positive alert by the drug dog.

The government contends the officers had reasonable suspicion that McNabb's Cadillac was carrying contraband due to Starkey's conduct in attempting to divert the officer's away from McNabb's vehicle. The government suggests this reasonable suspicion became probable cause to search McNabb's car once McNabb immediately exited his car and refused to obey Officer Miller's repeated commands to get back in the vehicle. The government also suggests the officers' probable cause was strengthened when, upon his arrest, McNabb yelled to Starkey, "Hey, Jesse, have my bond posted and tell my brother to come get my car." (Dkt. 36, p. 7.) The government suggests "[a]ll of these facts establish probable cause that McNabb intended to put the Cadillac beyond the reach of police because the car would contain evidence or contraband," and that "[t]hese facts alone gave the officers probable cause to search the Cadillac." (*Id.*) The Court need not determine whether McNabb's conduct and suspicious behavior alone established probable cause because it finds the positive drug dog alert provided probable cause to search McNabb's car.

In *Illinois v. Caballes*, 543 U.S. 405, 410 (2005), the Supreme Court held the Fourth Amendment does not require reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop. Defendant in *Illinois* was legitimately stopped for speeding while another officer walked his dog around the

defendant's car and obtained a positive alert for drugs. *Id*. at 406. The Supreme Court determined, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* at 410. In so holding, the Court explained:

> Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment. We have held that any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.' This is because the expectation 'that certain facts will not come to the attention of the authorities' is not the same as an interest in 'privacy that society is prepared to consider reasonable.'

*Id*. at 408-409 (quoting *United States v. Jacobsen*, 466 U.S. 109 (1984)).

In this case, McNabb was legitimately stopped for failing to properly signal and making a wide turn when Officer Plaisted walked the drug dog around McNabb's vehicle and obtained a positive alert. McNabb has not offered any evidence to challenge the validity of the drug dog's positive alert, and the evidence in the record and testimony of Officer Plaisted established the extensive training and accuracy of the drug dog in this case. The positive alert thus gave the BPD officers probable cause to search McNabb's car. *Florida v. Harris*, 133 S.Ct. 1050, 1058 (2013). Moreover, although McNabb does not advance the point, the drug dog alert occurred merely six minutes after McNabb's car was initially stopped, and the stop was not unreasonably prolonged in order to conduct the dog sniff. Delay is thus not an issue in this case. The Court finds the positive drug dog alert provided officers with probable cause to search McNabb's vehicle.

`Case 1:15-cr-00019-EJL   Document 53   Filed 09/21/15   Page 10 of 10`

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that the Motion to Suppress (Dkt. 33) is **DENIED**.

DATED: September 21, 2015

Edward J. Lodge
United States District Judge